**Robert HAYDEN, Plaintiff–Appellant,**

v.

**J.A. REICKERD, Michael Hernandez, Lockheed Missiles & Space Company, Inc., Lockheed Corporation, Defendants–Appellees.**

No. 89–16534.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 5, 1991.

Memorandum Dec. 19, 1991.

Order and Opinion March 3, 1992.

Henry M. Steinberg, San Francisco, Cal., for plaintiff-appellant.

Patricia Murray, Morrison & Foerster, Santa Clara, Cal., for defendants-appellees.

Before TANG, FARRIS and D.W. NELSON, Circuit Judges.

## ORDER

The memorandum disposition filed December 19, 1991, is redesignated as an authored opinion by Judge Tang.

## OPINION

TANG, Circuit Judge:

Robert Hayden, a Lockheed Corporation employee and union steward, sued Lockheed and two of its management employees in state court for battery and retaliation. Lockheed removed the action to federal court and moved for summary judgment. The district court granted Lockheed and its management employees summary judgment, holding that federal labor law preempts Hayden's state claims. Upon Hayden's appeal, we vacate judgment and remand.

## FACTS AND PROCEEDINGS

Hayden, a thirty-year employee of Lockheed, is an active member of the International Association of Machinists and Aerospace Workers, Local Lodge 2228 ("Union"). As a union steward, Hayden represented other Lockheed employees in grievance proceedings at Lockheed's Sunnyvale, California plant. On February 15, 1988, Hayden and another union member met for a grievance procedure with defendant J.A. Reickerd, a Lockheed management employee. Lockheed alleges that during the meeting, Hayden used obscene language and called Reickerd a liar. Hayden alleges that Reickerd "abruptly terminated the meeting, grabbed [Hayden] by the shoulders; turned him around in the direction of the door and violently shoved [Hayden] out of" Reickerd's office.

Hayden alleges that this shoving injured his back and neck and aggravated a preexisting disc disease. The day after the shoving incident, Hayden sought medical treatment from a Lockheed doctor. The doctor limited Hayden's work duties to "bench" work and recommended reducing stress. Lockheed thereafter denied Hayden workers' compensation benefits. Hayden therefore sought continuing treatment from his private physician. That doctor continued to limit Hayden's work duties and recommended reducing stress.

Hayden alleges that his Lockheed supervisor, defendant Michael Hernandez, subsequently conspired to harass and retaliate against Hayden for his union activities. This course of harassment, according to Hayden, culminated in his suspension from work for an involuntary medical leave. On August 30, 1988, Hernandez sent Hayden back to the Lockheed doctor for a physical examination. The Lockheed doctor reiterated the bench work limitation and reduction in stress. At Hernandez's insistence, Hayden alleges, the Lockheed doctor then changed his recommendation. Hernandez

then placed Hayden on involuntary medical leave.

Hayden filed a union grievance alleging that Reickerd and Hernandez violated Lockheed's collective bargaining agreement with the union. That grievance eventually was arbitrated. Hayden missed, however, the six-month statutory deadline for filing a federal cause of action based on Reickerd's assault and battery.

On November 9, 1988, nine months after the battery and three months after placement on involuntary medical leave, Hayden filed a complaint in California state court against Reickerd, Hernandez, and Lockheed. Hayden alleged the torts of assault and battery against Reickerd, and claimed Lockheed is vicariously liable for Reickerd's conduct. Hayden also alleged that Reickerd and Hernandez conspired to harass and retaliate against him for his union activities, causing him stress against doctors' orders. Hayden alleged Lockheed is vicariously liable for the retaliation and conspiracy also. Hayden claimed damages for physical injury, uncompensated medical expenses, mental anguish, and lost time from work. He also sought punitive damages.

In December 1988, Lockheed removed Hayden's state court action to federal district court. The district court agreed that Hayden's complaint falls under exclusive federal jurisdiction by implicating federal labor law. Lockheed then moved for summary judgment. The district court granted Reickerd, Hernandez, and Lockheed summary judgment. The district court held that federal labor law preempts all of Hayden's state law claims. Hayden's only recourse for the allegations in his complaint, the district court held, was in an action under section 301 of the Labor Management Relations Act ("LMRA"). Because Hayden had failed to file such an action in time, the district court concluded, Hayden could pursue no claims in federal court. The court therefore entered judgment for all the defendants.

Hayden timely appeals the district court's decision that federal labor law preempts his state tort claims. He seeks reversal and remand of the case to state court to pursue his state tort action.

## STANDARD OF REVIEW

 We review de novo the district court's grant of summary judgement. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). In conducting this review, we must determine, viewing the evidence in the light most favorable to Hayden, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## DISCUSSION

Hayden asserts two distinct causes of action, battery and retaliation for union activities. Hayden's complaint seeks to hold Reickerd, Hernandez, and Lockheed jointly and severally liable for both causes through theories of conspiracy and vicarious liability. California law establishes both Hayden's causes of action and his theories of liability. The district court held that section 301 of the Labor Management Relations Act ("LMRA") preempts Hayden's claims. In addition, Lockheed argues on appeal that the *"Garmon"* doctrine of preemption under the National Labor Relations Act ("NLRA") vests exclusive jurisdiction for Hayden's claims in the National Labor Relations Board ("NLRB").

### A. *Section 301 Preemption*

 The district court held that Section 301 of the LMRA, 29 U.S.C. § 185(a), preempts all of Hayden's state law claims. We have previously explained the rationale for section 301 preemption in *Miller v. AT & T Network Sys.*, 850 F.2d 543, 545 (9th Cir.1988). "Section 301," the *Miller* court said, "creates a federal cause of action for breach of collective bargaining agreements ... even if brought in state court. Applying federal law to these cases ensures a uniform interpretation of labor contract

terms, a goal that the Supreme Court has described as particularly compelling." *Id.* (citation omitted). Toward this goal, even suits based on torts such as Hayden's "are governed by federal law if their evaluation is 'inextricably intertwined with consideration of the terms of [a] labor contract.'" *Id.* (quoting *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985)). Therefore, section 301 "preempts all state-law causes of action evaluation of which requires interpretation of a labor contract's terms." *Id.*

The *Miller* court observed that the scope of section 301 is "substantial," but not infinite. *Id.* "If a court can uphold state rights without interpreting the [collective bargaining agreement]," the court said, "allowing suit based on the state rights does not undermine the purpose of section 301 preemption." *Id.* at 545–46. Therefore, the *Miller* court noted, " 'non-negotiable state-law rights ... independent of any right established by contract' are not preempted." *Id.* at 546 (quoting *Allis–Chalmers,* 471 U.S. at 213, 105 S.Ct. at 1912). "A contrary rule," the *Miller* court reasoned, "would permit unions and employers to exempt themselves from state labor standards. Congress never intended 'to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" *Id.* (quoting *Allis–Chalmers,* 471 U.S. at 212, 105 S.Ct. at 1912).

We have also explained the more recent Supreme Court cases describing the two bases upon which section 301 may preempt state law claims such as Hayden's. *See Gulden v. Crown Zellerbach Corp.,* 890 F.2d 195, 198 (9th Cir.1989). "First, section 301 may preempt a state claim 'on the basis of the subject matter of the law in question,' *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 ... (1988), as where the " 'claims [are] founded directly on rights created by collective-bargaining agree-

ments.' " *Id.* 108 S.Ct. at 1884 n. 10 (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 394 [107 S.Ct. 2425, 2431, 96 L.Ed.2d 318] (1987))." *Id.* "Second, where the right is created by state law and not by the collective-bargaining agreement, a claim based upon that right is preempted 'if [the application of state law] requires the interpretation of a collective-bargaining agreement.' *Id.* 108 S.Ct. at 1885; *see Caterpillar Inc.,* 482 U.S. at 394 [107 S.Ct. at 2430] ('Section 301 governs claims ... "substantially dependent on analysis of a collective bargaining agreement." ')." *Id.* Accordingly, if Hayden's claims are neither based upon Lockheed's collective bargaining agreement nor dependent upon an interpretation of that agreement, section 301 does not preempt them. *Id.* Notably, " ' "[N]ot every dispute ... tangentially involving a provision of a collective-bargaining agreement is preempted by 301." ' *Lingle,* 108 S.Ct. at 1885 n. 12 (quoting *Allis–Chalmers,* 471 U.S. at 211, 105 S.Ct. at 1911). Rather, [a] claim is preempted only if it 'turn[s] on any collective-bargaining [agreement] interpretation.' *Id.* 108 S.Ct. at 1881 n. 5." *Id.* (emphasis added).

### 1. The battery claim.

■ Hayden argues that his battery claim arises from a right created by independent state common law and not by Lockheed's collective bargaining agreement. His argument is beyond cavil. *See Galvez v. Kuhn,* 933 F.2d 773, 777 (9th Cir.1991). Whatever the parties' rights and duties under their collective bargaining agreement, they could not possibly have negotiated infringement of Hayden's state law right to be free from battery. *Id.* Hayden's battery claim thus rests firmly on a nonnegotiable state right and does not turn on any interpretation of Lockheed's collective bargaining agreement. We therefore vacate judgment on the battery claim. Upon remand, the district court should remand this claim to state court.[1]

---

1. The district court cited *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978), for the proposition that "state court claims alleging misconduct during meetings regarding contract violations are governed by the NLRA." In *Magnuson* the court rejected a railroad worker's attempt to circumvent national railroad regulation. Plaintiff had sued in state court for emotional distress, although an al-

## 2. The retaliation claim.

Hayden alleges that the battery, continuing willful infliction of stress, his reexamination by a Lockheed doctor, his placement on involuntary medical leave, Hernandez's discriminatory surveillance of him, and verbal abuse from Hernandez all constitute unlawful retaliation for his union activities. The California Labor Code declares it is the public policy of the state to protect workers from retaliation for union activities, Cal.Lab.Code § 923, and it criminalizes retaliatory conduct, Cal.Lab.Code § 922. Hayden has thus asserted a nonnegotiable state right, independent of Lockheed's collective bargaining agreement, as the basis for his state retaliation claim.

The district court held, however, that determination of whether Reickerd, Hernandez, and Lockheed retaliated against Hayden depends upon interpretation of the collective bargaining agreement. The court noted that the collective bargaining agreement governs at least the propriety of Hayden's reexamination and medical leave. The parties, in fact, arbitrated Hayden's grievance of the medical leave. We have reviewed the sections of the collective bargaining agreement available to us in the record.[2] On the basis of that review, we conclude that Hayden's state law right to be free from at least the battery, the continuing infliction of stress, and the verbal abuse he alleged as retaliation do not turn on interpretation of any term of the agreement. We therefore hold that at least part of Hayden's retaliation claim survives section 301 preemption also.

Lockheed argues that Hayden's retaliation claim turns on interpretation of the collective bargaining agreement because that agreement includes a nondiscrimination clause. "Mere similarity between state-law protections and contractual provisions," however, does "not require preemption." *Miller*, 850 F.2d at 546. That Lockheed's nondiscrimination clause may duplicate California's statutory prohibition against retaliation does not mean that Hayden's retaliation claim depends upon reference to the agreement. *See id.* ("preemption ... requires that the dispute could be resolved under the [collective bargaining agreement], *and* that the state law did not establish a criterion for deciding the case that permits application of state law without reference to the terms of the [agreement]").

We note that the parties have failed to provide us with sufficient factual information about the conduct involved in the alleged retaliation and about the collective bargaining agreement for us finally to determine whether federal labor law preempts all of Hayden's retaliation claims. At this point, however, we conclude that Hayden may be able to prove at least some of his allegations of retaliation—the battery, infliction of stress, and verbal abuse—without reference to the collective bargaining agreement. We therefore vacate judgment on the retaliation claim also, and direct its remand to state court.[3]

## 3. The conspiracy and vicarious liability claims.

As Hayden has pleaded it, his conspiracy claim is no separate cause of action, but rather is one of his theories why each of the defendants should be as liable as the others for the underlying claims of battery and retaliation. Likewise, Hayden's claim of Lockheed's vicarious liability for Reickerd's battery constitutes no separate cause, but rather is a theory of liability. The district court decided that section 301 preempts these two theories because they depend upon interpretation of Lockheed's collective bargaining agreement. The dis-

leged wrongful discharge plainly animated his complaint. The district court held that national railroad labor law preempted the complaint. *Id.* The *Magnuson* case announced no rule applicable to Hayden's case about preemption of torts during grievance meetings.

**2.** We note that both parties failed to provide a complete copy of the collective bargaining

agreement either in the record below or upon appeal.

**3.** If federal labor law indeed should preempt any part of Hayden's retaliation claim, the state court may consider that issue upon remand. *See* our discussion of *"Garmon"* preemption in Section B below.

trict court discussed specifically only Hayden's vicarious liability claim: "[I]n order to determine whether Lockheed did ratify the alleged assault and battery, the court must necessarily interpret the collective bargaining agreement because the actions Lockheed took in response to [Hayden's] complaint occurred under the aegis of the collective bargaining agreement."

In reaching this conclusion, the district court misplaced reliance on an analogous, out-of-circuit district court case, *Johnson v. AT & T Technologies*, 713 F.Supp. 885 (M.D.N.C.1989). In *Johnson*, the district court held that section 301 did not preempt the underlying cause of action, a battery, alleged against plaintiff's supervisor. *Id.* at 889. The *Johnson* plaintiff also alleged a *separate* claim of intentional infliction of emotional distress against her employer because of the employer's "failure to address her complaints." *Id.* Because of that failure, plaintiff alleged, the employer "ratified and acquiesced in" the supervisor's tort. *Id.* The *Johnson* court concluded that plaintiff's separate claim against her employer was preempted because it "clearly involve[d] reference to the collective bargaining agreement to determine what steps, if any, [the employer] was obligated to take to address Plaintiff's complaint." *Id.* In Hayden's case, the district court attempted to force fit this *Johnson* holding onto a different set of facts.

Unlike Johnson, Hayden did not allege that Lockheed is liable for its "failure to address" some "complaint" Hayden had lodged. The *Johnson* court's rationale for section 301 preemption is therefore simply inapplicable. Instead, Hayden has claimed that Lockheed is liable vicariously for Reickerd's battery because Lockheed employed Reickerd and because Lockheed failed to discipline him for the battery.

On the basis of the excerpts available to us on appellate review, we conclude that the collective bargaining agreement does not describe Lockheed's duties in disciplining its management employees or in preventing management's tortious conduct. Further, the collective bargaining agreement cannot supersede Hayden's state law

right to be free from battery and tortious retaliatory conduct in all events. Because Hayden's assertion of Lockheed's vicarious liability thus does not implicate the collective bargaining agreement, only the California law of vicarious liability governs Hayden's claim.

Further, even if the agreement did somehow bear on circumstances relevant to a determination of Lockheed's vicarious liability, it would be anomalous for us to rest preemption on that basis. Because section 301 does not preempt the battery claim and at least part of the retaliation claim, and because Hayden may proceed in state court, then neither does section 301 preempt Hayden's state law remedies and theories of liability for those claims. It would be illogical to permit Hayden's suit for damages on the underlying state torts while limiting Hayden's remedies for those torts to responses Lockheed owed to Hayden's complaint under the collective bargaining agreement. Instead, Lockheed's duties under the agreement to respond to Hayden's "complaint" of Reickerd's battery are irrelevant. We hold, therefore, that California law should fully define Lockheed's potential vicarious liability for the torts, just as California law defines the torts themselves without reference to the agreement.

In sum, the conspiracy and vicarious liability claims do not stand alone subject to preemption analysis under section 301. Rather, we view these two theories of liability in conjunction with the underlying claims of battery and retaliation. Because those two claims survive section 301 preemption, then so too do state law theories of liability which operate to make tort victims whole. We therefore vacate the district court's judgment on these theories of liability and direct their remand to state court.

## B. The *Garmon* Preemption Doctrine

In *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959), the Supreme Court held that the NLRB has original, exclusive jurisdiction over claims of unfair

labor practices arising under sections 7 and 8 of the NLRA. Section 7 defines protected union activities, 29 U.S.C. § 157, and section 8 protects employees engaged in those activities against employer coercion and discrimination. 29 U.S.C. § 158(a)(1), (3). The *Garmon* Court held that, "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the states as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon,* 359 U.S. at 245, 79 S.Ct. at 780. Lockheed argues that this *Garmon* preemption doctrine bars Hayden's state claims.

■ Lockheed argues for *Garmon* preemption in vain, and for at least two reasons. First, *Garmon* preemption is not a basis for removal from state to federal court jurisdiction. *See Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1397 (9th Cir.1988). If the *Garmon* doctrine preempts state claims, jurisdiction vests in neither state nor federal court, but rather exclusively in the NLRB. *Id.* Moreover, the assertion of *Garmon* preemption does not create a federal question for federal court jurisdiction. *Id.* at 1400–01. Lockheed's claim that the *Garmon* doctrine preempts Hayden's state claims could not, therefore, provide a jurisdictional basis for removal of the claims to federal court.

Instead, had Lockheed desired to invoke the *Garmon* preemption, it should have done so in state court. *Id.* at 1399 ("when a claim of *Garmon* preemption is raised, *'it must be considered and resolved by the state court'*") (citation omitted) (emphasis added). If the *Garmon* doctrine indeed preempts Hayden's claims, the federal district court never had jurisdiction in the first place, and the state court properly should have heard arguments on *Garmon* preemption. We therefore reject Lockheed's *Garmon* preemption arguments. As this circuit has previously held, "Though sections 7 and 8 may create a federal cause of action, it is not within the federal court's jurisdiction to resolve the dispute—it is for the NLRB to decide the case. Accordingly,

[rather than decide on *Garmon* preemption grounds], *the district court should have remanded the action to state court* under 28 U.S.C. § 1447(c)" for improper removal to federal court without jurisdiction. *Id.* at 1400 (emphasis added). Because we have concluded that Section 301 does not preempt Hayden's claims, we also conclude that removal to federal court was improvidently granted in this case.

■ Second, the *Garmon* preemption doctrine includes an important exception to exclusive NLRB jurisdiction. The *Garmon* court held that states may regulate where "the activity regulated [is] merely [of] peripheral concern of the Labor Management Relations Act ... [or] where the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the State of the power to act." *Garmon,* 359 U.S. at 243–44, 79 S.Ct. at 779 (citation omitted). The prime example of such state regulated conduct is violent torts. The *Garmon* court pronounced unequivocally that "we have allowed the states to grant compensation for the consequences, as defined by the traditional law of torts, of conduct marked by violence and imminent threats to the public order." *Id.* at 247, 79 S.Ct. at 781. Hayden's allegations of battery and abusive treatment, at least, fall squarely within this exception.

It seems, therefore, that Hayden's two causes of action should survive *Garmon* preemption for state vindication. The record does not establish sufficiently at this point whether all of Hayden's claim for retaliation might also survive *Garmon* preemption. The retaliation Hayden has alleged may or may not amount factually to a reserved California state interest in compensating victims of "violence and imminent threats to the public order." We note that the California state courts are in the best position to resolve those kinds of issues. We therefore instruct the district court to remand the case to state court.

## CONCLUSION

We vacate judgment on Hayden's battery, retaliation, conspiracy, and vicarious liability claims, and we direct their remand to state court. We recognize that upon remand to state court, the state court may consider *Garmon* preemption of at least some of Hayden's claims, particularly certain conduct alleged as retaliatory. For our purposes, however, we need decide only that removal to federal court was improvidently granted. The judgment of the district court is therefore vacated, and the district court is instructed to remand the case to state court.

VACATED with instructions to REMAND.